UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JIMMY STOETZNER                                     CIVIL ACTION

VERSUS                                              NO. 10-1811

TANGIPAHOA PARISH SHERIFF'S                         SECTION "F" (2)
OFFICE ET AL.

## REPORT AND RECOMMENDATION

This is a prisoner's civil rights suit for damages pursuant to 42 U.S.C. § 1983,
filed pro se and in forma pauperis. Plaintiff Jimmy Stoetzner asserts four kinds of claims
against the Tangipahoa Parish sheriff and others employed at the Tangipahoa Parish Jail.
His claims include: (1) failure to protect him from an attack by another inmate; (2)
housing him with convicted inmates during a time period when he was a pretrial
detainee; (3) inadequate medical care for a broken jaw suffered in the altercation with the
other inmate in the jail; and (4) inadequate food service.

On September 14, 2010, I conducted a telephone conference in this matter.
Participating were plaintiff pro se and Brooke Burrescia, counsel for defendants.
Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766
F.2d 179 (5th Cir. 1985), and its progeny. At the conclusion of the conference, I ordered
defendants to file their motion for summary judgment concerning plaintiff's housing
classification claim, Record Doc. No. 21, and they have done so. Record Doc. No. 24.

Plaintiff filed two responses in opposition to defendants' motion.  Record Doc. Nos. 27 and 29.  Defendants were then permitted to file a reply.  Record Doc. Nos. 33, 34 and 35. Plaintiff responded in writing to the reply. Record Doc. No. 36. In addition, I have considered plaintiff's sworn testimony given on September 14, 2010 in opposition to the motion.  Record Doc. Nos. 21 and 37.

## THE RECORD

Stoetzner testified that he is currently incarcerated based upon his July 8, 2010 conviction on various charges, including aggravated burglary, attempted armed robbery, aggravated battery and drug possession, for which he is currently serving a five-year prison sentence. He confirmed that his claims arise from his incarceration in the Tangipahoa Parish Jail from December 11, 2009 through August 20, 2010, when he was transferred to another prison facility.  Plaintiff stated that his claims are based on an incident involving an altercation between himself and another inmate, Matthew Moore, that occurred on February 21, 2010, while Stoetzner was a pretrial detainee.

Plaintiff testified that on February 21st, he was placed in a dorm "full of DOC (Department of Corrections) inmates."  He stated that an altercation occurred between two other inmates, Moore and Christopher Miller, who began fighting with each other. He said that during the fight, another inmate took Moore's shoes away from him. Stoetzner testified that deputies came into the dorm, placed Miller in administrative

lockdown and moved Moore into the next dorm. Plaintiff stated that on the following day, he and other inmates were being taken outdoors into the recreational yard, but in the hallway on the way to the yard, Moore came up behind Stoetzner and struck him in the jaw, knocking Stoetzner to the floor. Plaintiff said that Moore continued to hit him, striking him in the head and elsewhere, until other inmates separated them.

Stoetzner testified that Moore attacked him because Moore thought Stoetzner had something to do with taking Moore's shoes and that Stoetzner had told deputies the fight had been Moore's fault. Stoetzner said he had <u>not</u> been involved in taking Moore's shoes or in the fight between Moore and Miller on the previous day, but Moore attacked him anyway because he blamed Stoetzner for taking his shoes and telling guards the fight had been Moore's fault. Plaintiff said he did not know who had taken Moore's shoes.

Stoetzner blamed the attack on defendants because his jailers had housed him with DOC inmates. He said he should have been in a dorm with pretrial detainees and that he would not have been attacked by Moore if he had been housed elsewhere. He testified that he had requested to be housed separately from the DOC inmates before the fight because "it was a bad dorm" and "people fought in there" frequently. Stoetzner testified that he had been involved in fights himself in that dorm previously, but he had <u>not</u> had any previous altercation with Moore, other than to "have words," before the subject incident. Asked if he had ever told deputies that he felt threatened by Moore, he testified

3

that he felt threatened, not by Moore personally, but generally by being housed with DOC inmates.  He confirmed that it was a general kind of anxiety that prompted his requests to be moved and not any specific threat from Moore. He said that Moore had not previously been in any fights while he was in that dorm.

Stoetzner testified that he did not know why he was being housed with DOC inmates, but he speculated that it was "the lack of work and care of the deputies because . . . that jailhouse is run very poorly over there."  He stated that he was housed with convicted inmates from December  9, 2009 until February 2010, when his jaw was broken by Moore, after which he was kept "up front" in a medical area, until surgical wires were removed from his jaw and he was returned to the general dorm. He testified that he did not get into another fight or altercation of any kind after the subject incident.

Stoetzner said the attack by Moore lasted about fifteen seconds; Moore hit him, he fell to the floor; Moore got on top of him and hit him again until others whom he could not identify separated them.  Stoetzner explained that his claim against defendants is not that they had any reason to know that Moore was going to attack him that day, but that defendants had exposed him to the harm because they improperly housed him with convicted inmates at a time when he was a pretrial detainee.

As to his medical care claim, plaintiff alleged that it was inadequate in that he was initially placed "in a hole up front," by which he meant a single-man cell, 12 by 15 feet

in size, located near the front intake section of the jail. He said that in that cell he slept on a "built up" concrete slab. He testified that while in that cell, he was prescribed liquid Lortab and penicillin because "my mouth was wired shut." He said that another inmate was assigned to bring him his medications, but he complained that inmates are not supposed to have access to other inmates' medications. Stoetzner also complained that he should have received his medication four times per day, but sometimes the medication was not delivered. He estimated that he was in the one-man cell for about "two-and-a-half to three months," and "I missed it [the medications] quite a bit . . . probably anywhere between 15 and 20 times."

He confirmed that he had received and reviewed the medical records I previously ordered defendants to produce, Record Doc. Nos. 9 and 22, and that they are accurate. He confirmed that he was taken from the Tangipahoa jail to Earl K. Long Hospital in Baton Rouge for oral surgery on February 22, 2010. He said his jaw was initially wired shut because the surgery could not be done immediately, and he was taken back to the hospital a few days later for a "pre-op" examination before his surgery was performed on March 5, 2010. He said that as soon as his surgical sedation was complete, he was taken back to the jail and placed again in the one-man cell at the front of the jail. He testified that he was taken back to Earl K. Long Hospital from the jail "10 or 15 times more," for follow-up care. He said his care continues for his broken jaw, and stated that

"they're taking real good care of me" at the facility in Morehouse Parish where he is currently incarcerated.

Plaintiff testified that on one of his trips to Earl K. Long Hospital, the wires were temporarily removed from his jaw, but when he was returned for a check-up, the doctors had to re-do his jaw treatment because he was supposed to be given only liquid food or pureed food during his recuperation, but he did not always receive it. Stoetzner said that he did not eat at all for two days, and that on other days he had to eat regular food instead of liquid or pureed food because that was all he was given at the jail on those days. He said that sometimes he would be given the chicken broth he was supposed to receive, but it was cold. He said that when he complained, the inmates who delivered the food were orally reprimanded, and the inmates retaliated against him by putting cayenne pepper in it. He speculated that later the inmates were urinating in the broth or otherwise tampering with it. Stoetzner complained that inmates should not have been assigned to deliver his food.

Plaintiff stated that these problems with the food persisted throughout the two-and-a-half to three months he was kept in the one-man cell, and he lost weight. Asked how many meals he missed during this time, Stoetzner testified, "I missed two meals for sure" and at other times he received either cold broth or adulterated food, all of which he complained about to Warden Wheat.

6

Plaintiff testified that when he was returned to the regular dorm with DOC inmates after his stay in the one-man cell ended, he was still going to the doctor, who was giving him Ibuprofen and Perodex. He complained that defendant Nurse Sweeney did not provide the Ibuprofen, and when he complained, Sweeney responded by calling Stoetzner a "smart-ass" and saying that only Perodex had been prescribed. Stoetzner stated that he did receive a "15-count" of Tylenol for one day, it was stopped because he was supposed to be returned to oral surgery, but his return to the hospital for surgery was delayed. He confirmed that he received hydrogen peroxide (Perodex) and xylacaine for a rash for 10 to 14 weeks; that he was provided with Lortab, both liquid for four weeks and tablets for a week; and Tylenol for five days.

Stoetzner alleged that several inmates were mistreated at the Tangipahoa Parish Jail, but none of that pertains to his case. He complained that Dr. Guidry saw him only once at the jail, when a piece of wire from the oral surgery broke in his mouth. He stated that at all other times it was Sean Sweeney, the jail nurse, who saw Stoetzner on the numerous occasions when he returned from Earl K. Long Hospital. He said that when the broken piece of wire was removed by Nurse Sweeney with the assistance of an inmate, it caused pain and discomfort.

In their motion for summary judgment, defendants address three of plaintiff's four claims. Specifically, as to plaintiff's claim that he was a pretrial detainee who was

improperly housed with convicted inmates, defendants argue that Stoetzner was classified and housed within the jail as a "maximum security" offender pursuant to jail officials' written policy and procedure, based upon Stoetzner's extensive criminal history, including his prior incarceration in the jail; the nature of the offenses with which he was charged and ultimately convicted, including the violent offenses of armed robbery, aggravated burglary, aggravated battery, and false imprisonment of another person while armed with a dangerous weapon, together with drug offenses; his prior failure to appear in court, necessitating the issuance of warrants; and his high bond setting, initially $1 million, later reduced to $100,000. Defendants' arguments are supported by various exhibits, including the records of both the jail and the state court in which Stoetzner's criminal proceedings were conducted. As to plaintiff's medical care and failure to protect claims, defendants argue, based principally on plaintiff's own testimony, that he received constitutionally adequate medical care for his broken jaw, which was the result of a sudden attack by another inmate which defendants could not have anticipated.

In his written responses to the motion, plaintiff does not deny the nature of his criminal history or his ultimate convictions. Instead, he points out that he was initially assigned a trustee position in the jail and that his pre-trial bond was reduced from $1 million to $100,000. Record Doc. No. 29 at p. 5 of 7. "If I was classified as a maximum

security inmate, why was I given a trustee job in the kitchen around knife (sic), weapons, etc. also part of the job is that you go outside to retrieve supplies. . . . I worked there about one month. . . . If I was classified as maximum security I would've never been placed trustee around weapon (sic) . . ." Id. at p. 4 of 7.

In their reply memorandum, supported by Tangipahoa Parish Jail "Cell to Cell Move" records, defendants concede that on January 5, 2010, Stoetzner was "placed as (a) kitchen trustee," but on January 26, 2010, this classification was removed in light of his still high bond, his criminal record and the violent nature of the offenses with which he was charged.

In his response to defendants' reply, plaintiff reiterates in greater detail his earlier arguments in opposition to the motion concerning his initial classification as a trustee and the reduction of his bond from $1 million to $100,000.  He also notes that he has been rescheduled for follow-up jaw surgery that he missed while incarcerated in the Tangipahoa Parish Jail during the first week of December 2010 at the oral surgery unit of the LSU Medical Center in Shreveport, Louisiana.

## ANALYSIS

### I.   STANDARDS OF REVIEW

Defendants' motion for summary judgment addresses three of plaintiff's claims, all except plaintiff's claims concerning his food and the alleged supervisory liability of Sheriff Edwards and Warden Wheat.  Thus, the following two separate legal standards apply to this court's review of plaintiff's claims on the current record.

### (A)   SCREENING

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

12

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's claims concerning the food at the jail and supervisory liability must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's allegations about his food and any supervisory liability of Sheriff Edwards and Warden Wheat, as amended by his testimony at the Spears hearing, fail to state a cognizable claim that his constitutional rights were violated, even under the broadest reading.[1]

(B)      SUMMARY JUDGMENT

Plaintiff's remaining claims, alleging that he was a pretrial detainee improperly housed with convicted inmates, that defendants failed to protect him from attack by another inmate, and that he did not receive adequate medical care, are the subject of defendants' motion for summary judgment. "The court shall grant summary judgment

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

if movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support all essential elements of his claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

14

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

In this case, the record, including plaintiff's testimony and his various written submissions explaining the factual basis of his claims, fails to establish a triable issue of

fact as to essential elements of plaintiff's claims on which he bears the burden of proof at trial.  I find that defendants are entitled to judgment as a matter of law and that summary judgment must be granted to defendants concerning Stoetzner's classification, medical care and failure to protect claims.

II.    PRETRIAL DETAINEE CLASSIFICATION

Stoetzner alleges that, as a pretrial detainee, he was improperly housed with convicted inmates and that another inmate attacked him as a result.  In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981),[2] the Fifth Circuit stated that

> [t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation.  Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted . . . .  Nonetheless, pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit."

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added).  Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke

---

[2]Overruled on other grounds by International Woodworkers v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is a prison administrative function. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner,

532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that imposition of greater security measures as to particular pretrial detainees is warranted if an inmate has a long criminal record, including violent crimes. Jones, 636 F.2d. at 1374. Under the precise circumstances of this case, it cannot be concluded that defendants' individualized decision to house Stoetzner with convicted inmates was unconstitutional.

The summary judgment record establishes that defendants classified Stoetzner as a maximum security risk based upon his extensive criminal record, including the violent nature of the crimes with which he was then charged and ultimately convicted. Significantly, Stoetzner does not contest the nature of his criminal record or the violent crimes for which he was then being held and ultimately convicted. He argues principally that the fact he was initially classified for about 30 days as a kitchen trustee establishes that his later re-classification was unwarranted. Plaintiff's subjective belief that he should not have subsequently been classified as a maximum security risk is insufficient for the court to conclude that prison officials' discretionary decisions concerning jail security assessments were unconstitutional. Stoetzner's own testimony establishes that Moore posed no known or anticipated threat to Stoetzner before their sudden and unanticipated

fight. This circumstance, coupled with Stoetzner's criminal history, supports the objective reasonableness of this particular housing decision.

In this instance, housing Stoetzner together with convicted inmates cannot be characterized as arbitrary or indiscriminate.  It was a reasonable administrative decision based on individualized assessment of Stoetzner's record and situation.  It was not an abuse of the discretion the law assigns to prison officials, with which this court should not interfere.  No violation of Stoetzner's constitutional rights occurred under these circumstances.

III.     FAILURE TO PROTECT

Construed broadly, Stoetzner's allegation that he was attacked by another inmate as a result of his allegedly improper placement or classification within the jail may also assert a claim that prison officials unconstitutionally failed to protect him from harm. Stoetzner was a pretrial detainee at the time of the incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit stated:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hare, 74 F.3d at 650. "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" Pogue v. Bello, 275 F.3d 1079, 2001 WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)). Here, while plaintiff may allege that he was exposed to harm by prison officials' acts or omissions, he fails to state a claim cognizable under Section 1983.

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that

a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted). Thus, plaintiff must show that a risk of serious harm existed from another inmate to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhem v. Marion County Sheriff Dep't, 263 F.3d 164, 2001 WL 803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 834, 837; accord Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir.

21

2003).  If the court finds that one of the components of the test is not met, it need not

address the other component.  <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a <u>stringent</u> standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action.  <u>Board of the
> County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S.
> 397, 117 S.Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511

U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that

nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.

Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that defendants knew he faced a substantial risk of serious harm

and disregarded that risk by failing to take reasonable measures to abate it.  In this case,

Stoetzner fails completely to allege facts sufficient to establish deliberate indifference.

It cannot be concluded that prison officials unconstitutionally exposed plaintiff to

a substantial risk of serious harm.  Plaintiff's own testimony confirms that neither prison

officials nor Stoetzner himself had any reason to believe or even suspect that the other

inmate, Moore, posed any danger to Stoetzner, as there was no history of prior incidents between him and Moore, whom he said had not previously been involved in fights in that dorm.  Plaintiff testified that the incident occurred suddenly and without warning when Moore struck Stoetzner in a fifteen-second attack as they were being taken to outdoors recreation.  As discussed above, prison officials' decision to place Stoetzner in a holding area with some convicted inmates was a constitutional and reasonable individualized classification decision.

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed Stoetzner to a substantial risk of serious harm or that they were deliberately indifferent in the constitutional sense.  Any claim that prison officials violated plaintiff's constitutional rights by failing to protect him from harm must be dismissed.

IV.  MEDICAL CARE

Stoetzner was initially a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care at the Tangipahoa Parish Jail.  He asserts that he received inadequate medical care for the broken jaw he suffered in the altercation with the other inmate.

Before the Fifth Circuit's decision in Hare, id., 74 F.3d 633, which is discussed above, it appeared that prison officials must provide pretrial detainees with reasonable

23

medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, as discussed above, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id.

24

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  Again, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847 (1994). The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

25

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th

Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim.

Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).  As discussed above,

"'deliberate indifference' is a stringent standard of fault, . . ."  Southard, 114 F.3d at 551.

Tamez, 589 F.3d at 770.  Again, "'subjective recklessness,' as used in the criminal law,

is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

The deliberate indifference standard applies to complaints of episodic acts or

omissions, as defined in Hare, by both pretrial detainees and convicted inmates.  McCarty

v. Zapata County, 243 F. App'x 792, 794 (5th Cir. 2007) (citing Gibbs v. Grimmette, 254

F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d at 636).  A complaint that defendants

refused to provide plaintiff with adequate medical treatment qualifies as an "episodic act

or omission," which triggers the deliberate indifference standard.  Tamez, 589 F.3d

at 770.

Stoetzner's testimony and the verified medical records confirm that plaintiff

cannot establish deliberate indifference concerning his medical care in this case.  Even

assuming, without concluding, that plaintiff's broken jaw presented a serious medical

need for constitutional purposes, he has alleged facts, confirmed by his own testimony

and the medical records, that negate any inference of deliberate indifference by jail

officials.  His testimony, confirmed by the medical records, Record Doc. No. 22, shows

that he received constitutionally adequate medical care while incarcerated at the jail. Prison officials took him to a hospital in Baton Rouge shortly after the attack, and he was returned to the hospital subsequently on numerous occasions for oral surgery and follow-up examinations and care.  During his recuperation while in the jail, he was segregated from the rest of the prison population, provided with medications and seen by Nurse Sweeney on several occasions.

> A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record, and "deliberate indifference" in the constitutional sense cannot be inferred under these circumstances.  See Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe

28

enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 F. App'x 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Contentions like Stoetzner's that amount to a mere disagreement with the quality or speed of his medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 580 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)  (plaintiff who alleged inadequate

treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.

V.    FOOD

As to his complaints about the food at the Tangipahoa Parish Jail, Stoetzner alleges that he experienced problems with the special diet he required after his jaw surgery, including that he missed two meals and that his chicken broth was sometimes served cold or was adulterated by the other inmates who were responsible for serving it but had been reprimanded by jail officials for serving it improperly. States violate the Constitution if they fail to provide prisoners with reasonably adequate food, clothing, shelter and sanitation.  Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977), rev'd in part on other grounds sub nom Alabama v. Pugh, 438 U.S. 781, 915 (1978); George v. King, 837 F.2d 705, 707 (5th Cir. 1988); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974). However, Constitutional standards require only that prison authorities provide an inmate

with "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)).

Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food. First, no Constitutional violation occurs just because an inmate misses one or more particular meals. See Bellamy v. Bradley, 729 F.2d 416, 419-20 (6th Cir.), cert. denied, 469 U.S. 845 (1984) (missing meals for a day); Veteto v. Miller, 829 F. Supp. 1486, 1495-96 (M.D. Pa. 1992) (allegations of missed meals during brief period without allegations of going hungry); Morrison v. Martin, 755 F. Supp. 683, 686 (E.D.N.C.), aff'd, 917 F.2d 1302 (4th Cir. 1990) (generalized allegations of missed meals); Moss v. Ward, 450 F. Supp. 591, 596, 598 n.8 (W.D.N.Y. 1978) (deprivation of one meal or a day's meals); Herring v. Superintendent, Danville City Jail, 387 F. Supp. 410, 412 (W.D. Va. 1974) (missing breakfast). Moreover, the Constitution does not require that convicted inmates be provided with particular foods or every culinary amenity which one may find desirable. Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom., Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)); Murray v. Matty, 1985 WL 4948 at *1 (E.D. Pa. 1985). The Constitution also does not require that plaintiff receive particular amounts of food, Green, 801 F.2d at 770, or that his food be served by persons

who are not themselves inmates. "[I]nmates cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

The allegation that inmates who served his food may have violated the directions of jail officials does not give rise to a constitutional violation by the jail officials.  For the same reasons discussed in the prior sections of this report concerning the obligation of jail officials to protect inmates from harm, it cannot be concluded that Stoetzner's problems with his food posed a substantial risk of serious harm as to which defendants were deliberately indifferent.  Stoetzner's complaints about the food at the Tangipahoa Parish Jail are legally frivolous and fail to state a Section 1983 claim for which relief may be granted.

## VI.   NO SUPERVISORY LIABILITY

As to the supervisory defendants Sheriff Edwards and Warden Wheat, Stoetzner offers no proof that they were personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any,

were in their employ or under their supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that defendants were personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of these defendants and the alleged constitutional violation concerning the tuberculosis inoculation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.  Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d

404, 435 (5th Cir. 2008). To hold a supervisory official liable for the acts of a subordinate, "plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); accord Reyes v. Bridgwater, 362 F. App'x 403, 409 (5th Cir. 2010). No allegations or evidence tending to establish any of these essential elements of this kind of claim by Stoetzner, particularly not the deliberate indifference element, have been presented.

For all of the foregoing reasons, plaintiff's complaint in this case against Sheriff Edwards and Warden Wheat based upon their supervisory status over the Tangipahoa Parish Jail is legally frivolous and fails to state a cognizable Section 1983 claim that they violated plaintiff's constitutional rights.

### **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that defendants' motion for summary judgment concerning his housing/classification, medical care and failure to protect claims be GRANTED and that the remainder of plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

34

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ____7th____ day of January, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.